King, J.,
delivered the opinion of the court.
F. J. Schroeder and B. A. McMurry, co-partners under the firm name of Schroeder & McMurry, appellees herein, brought their action to recover from the defendant, Leeper, the sum of $977.78, as damages for an alleged breach of contract which the said defendant had entered into for the purchase from plaintiffs of certain lambs. Upon trial to the, court without the intervention of a jury judgment was rendered for plaintiffs, in the amount demanded. The contract sued upon was in writing and as follows:
1 ‘ This contract and agreement made and entered into this 22nd day of August in the year of 1907, at Greeley, Colo., by and between Schroeder & McMurry as party of the first part and C. E. Leeper as party of the second part, that party of the first part has this day sold and cpntracted with the party of the second part the following described sheep: 1,010 head of good, open-wooled lambs of Grants, New Mex., guaranteed to average not less than 60 lbs., and not’to take any under 50 lbs., to be *166 weighed after a twelve-hour shrink in a dry corral, at $5.65/100 per hundred pounds, F. O. B. at Grants, New Mex., on or about the 31st day of October, 1907, at which time and place the party of the second part agrees to receive them. Received on the above $50.00/000, balance of the purchase price to be paid when sheep are delivered.
Schroeder & McMurry,
C. E. Deeper.”
The complaint alleged that pursuant to the terms of this contract plaintiffs had, ready to deliver, at Grants, New Mexico, on the 31st day of October, 1907, lambs of the number and quality mentioned in the contract, and cars for their transportation, and held the same several days after said time; that prior to the date fixed for delivery they notified defendant that the stock would be ready for delivery on the date and at the place named in the contract, and that defendant had failed and refused to receive the same; that because of a serious money panic there was no market value for the lambs at Grants, New Mexico, at the time of the refusal of the defendant to receive the same, and that Denver was the nearest place at which there was,a'market; that after refusal of the defendant to receive the lambs, plaintiffs shipped the same to the market in Denver, where they were sold on said market for the highest price which they could obtain; that the difference between the contract price and the selling price, after deducting freight charges from Grants, New Mexico, to Denver, Colorado, and making allowance for the $50 paid in advance, was $977.78. The re-sale was made about December first.
Defendant, after demurrer which was overruled, answered, admitting the contract, but denying that at any time after the date thereof and prior to November 12th, plaintiffs notified him that the lambs were ready for delivery, and alleged that they then gave notice that the lambs would be ready for delivery at Albuquerque, New *167 Mexico, within a few days, insteads of Grants; that defendant immediately proceeded to Albuquerque, arriving on the night of November 14th, and that on November 15th he was notified by plaintiff, Schroeder, that plaintiffs did not have and could not deliver at Grants, the lambs mentioned in the contract, and that plaintiffs failed and refused to*deliver the lambs mentioned in the contract, at any time or place. The new matter in the answer was denied by replication.
At the trial the court found in favor of the plaintiffs on every disputed question of fact, upon evidence amply sufficient to justify such findings. The evidence upon the part of plaintiffs clearly showed that, after making the contract, they purchased and had on hand some 25,000 head of sheep, several thousand of which were at or near Grants, held, as was the usual custom, upon-the open range, where they could be readily called in and delivered ; that at and for some days prior to the 31st of October, and also for many days thereafter, they had a sufficient number of lambs of the weight and quality described in the contract from which they could have made the delivery as contracted, and were ready and anxious to deliver the same; that on or about the 28th of October Schroeder notified the defendant that the sheep would be ready. At that time a serious money panic was prevailing and defendant was unable to secure the money in Colorado for the purchase price, and for that reason plaintiffs agreed to extend, for a few days, the time for delivery, and also attempted to make arrangements in New Mexico, and did make arrangements, by which the paper of defendant, endorsed by plaintiffs, would be accepted by the owners of the sheep from whom plaintiffs had contracted to buy the same to fill their contract with defendant, and thereupon telegraphed defendant to come to Albuquerque and make the arrangements. Defendant presented himself at Albuquerque, but declined to make *168 the necessary arrangements. There was no evidence of an absolute refusal to receive the sheep, but much evidence that defendant was unable or unwilling to do anything in way of payment to carry out the agreement, unless perhaps to give his check upon a bank in Colorado in which he had no funds. He did not offer payment in that way, but on the trial contended that he had arrangements with that bank to honor his check, which claim was supported by the cashier of the bank, but whose testimony clearly showed that if the check had been presented the bank would not have paid it except by its draft upon some other bank, which also would refuse payment except by giving credit; and it is too obvious to require discussion that under the circumstances such check, if tendered, would not have been payment unless accepted, and would not have been accepted by either the plaintiffs or the owners of the sheep. It seems clear, as. found by the trial court, that defendant was either unwilling to receive the sheep, or unable to make payment therefor, or both, the evidence tending to show that he was not even supplied with sufficient funds to pay freight charges. The testimony is conflicting as to the matter of notice that the sheep were ready for delivery,' and as to what was said and done at Albuquerque, but the conflict is immaterial in view of the court’s finding supported by testimony.
Briefly stated, appellant’s main contention is (1) that under the pleadings and the evidence, notice to the defendant of plaintiff’s intention to sell the lambs and hold defendant liable for the loss sustained by his breach of contract was necessary to fix his liability, and, therefore, for want of such allegation the complaint was insufficient, and for lack of such proof , the evidence was likewise fatally insufficient; (2) that it was necessary to show a segregation of the lambs contracted, and tender, or readiness to tender the same so segregated and iden *169 tified at the time and place mentioned in the contract, and that the same lambs . so segregated and identified were the ones resold by plaintiffs; (3) that the evidence does not show a sale of the sheep for the best price that conld be obtained.
1. The contract sued on is an executory contract of sale and purchase. — Kellogg v. Frohlich, 139 Mich., 612, 102 N. W., 1057; Fox v. Kitton, 19 Ill., 519, 532; Watkins v. Nugen, 118 Ga., 372, 45 S. E., 262; Hatch v. Standard Oil Co., 100 U. S., 124, 130, 132, 25 L. Ed., 554. Upon breach by the- vendee of his executory contract to purchase’ chattels and receive and pay for the same upon delivery, the'vendor, in case title has not passed and he is in possession of the goods, may store the same for the-vendee, give him notice thereof, and thereupon sue and recover the full contract price; or, he may keep the goods and recover the difference between the contract price and the market price thereof at the time and place of-delivery mentioned'in the Contract; or, he may sell the goods for the best price he can obtain and recover from the vendee the’loss .sustained, generally measured by the difference between the contract price and the net proceeds derived from the sale. — Mechem on Sales, Sec. 1647; Magnes v. Sioux City N. & S. Co., 14 Colo. App., 219, 59 Pac., 879. With the foregoing statement of the vendor’s choice of remedies or method of proceeding to fix and measure the liability of the vendee for breach of his contract, appellant agrees, except that he insists that notice of intention to sell is a necessary element to be alleged and proven in order to fix and measure liability under the third remedy or method, which he asserts plaintiffs have elected to the exclusion of the others. As to whether notice of re-sale is necessary where title has passed there seems to be a hopeless and irreconcilable conflict of authority. — 35 Cyc., 522; Magnes v. Sioux City N. & S. Co., supra; Mechem on Sales, Sec. 1633. In Williston on *170 Sales, Sec. 548, it is said that by the weight of authority there is no such absolute requirement, and the statement is supported by a long array of decisions. In Mechera on Sales, Sec. 1634, it is said: “The rule, however, which, it is believed, is sustained by the weight of authority is, that unless the goods are perishable, or other special circumstances would render notice impracticable or unavailing, notice of the seller’s intention to resell must be given, if the seller intends to make the price realized upon the re-sale the basis of his recovery against the buyer.” And this statement is. supported by decisions from various states. But upon the necessity of notice, in case of breach of an executory contract, where neither title nor possession has passed from the vendor, we think the same conflict of authority does not exist, and that the better authority and reason, as well as the weight of authority, is that such notice is not necessary. — Magnes v. Sioux City N. & S. Co., supra; Wallace v. Coons, 48 Ind. App., 511, 95 N. E., 132; Kellogg v. Frohlich, supra; Dill v. Mumford, 19 Ind. App., 609, 49 N. E., 861. But whatever may be the weight of authority, we agree with both the reasoning and the conclusion of Judge Bissell in Magnes v. Sioux City N. & S. Co., supra, in which it was held that, under the circumstances in that case, there was no necessity to give notice of intention to resell the property; and as applied to the circumstances in the instant case, wé think the question may thereby be regarded as stare decisis in this jurisdiction.
2. Counsel for appellant contend for the rule that, as a condition precedent to the right of recovery, plaintiffs, prior to the alleged breach of contract, must have selected, segregated and set apart for defendant’s use, the animals contracted for in number and quality as in the contract specified, so that they became fully identified, and in support thereof say: “The reason of the rule is that since segregation is necessarily precedent to *171 passing of title, the vendor must, before breach, segregate the property so that title shall pass to the vendee. He can then treat the property as the property of the vendee and act as his agent in selling the same.” Counsel’s conclusion is based upon the unwarranted assumption that re-sale cannot be made unless the title has passed to the vendee. In re-sales by vendor, where title and possession have not been transferred, the imputation of his agency for vendee, is a bald fiction. • As has been shown, the contract was executory. The title had not passed and was not intended to pass until delivery and payment. Plaintiffs were not required to treat and could not logically treat the property as that of the defendant and “sell it as' his agent, for the property was not the defendant’s, and never became his. The purpose of the re-sale by the vendor, in addition to saving unnecessary loss to himself, or the vendee, was thereby to obtain evidence of and establish the-market price or value of the property at the time of the controversy, rather than to rely upon what must otherwise have been a matter of conjecture or opinion. — Mechem on Sales, Secs. 1649, 1692. We think the rule asserted is not applicable.
3. The evidence showed that on account of the money panic there was no market value at G-rants, New Mexico, at the time and place specified for delivery, nor subsequent thereto and until the re-sale was made; that the nearest place where there was a market was Denver. It is well settled that if the place of delivery affords no market for the articles sold, the vendor may send the goods to the nearest and most available market and there dispose of them in such a way as to produce the largest possible results. — Mechem on Sales, Secs. 1639, 1742; Lewis v. Greider, 51 N. Y., 231; Ingram v. Wackernagel, 83 Ia., 82, 48 N. W., 998; Anderson v. Frank, 45 Mo. App., 482. There was some evidence tending to show that some .of the sheep actually delivered on re-sale were, not fully *172 up to the grade required by the contract, and that some died en route. But the evidence quite clearly shows the market price in Denver at the time of the sale for sheep of the character specified in the contract; and the amount of the loss or damage was ascertained by computation at such market price upon the number contracted at the average weight specified in. the contract. Under the circumstances we think this furnished a fair basis for arriving at the loss sustained.
IVe do not deem it necessary to discuss in detail other points raised by appellant, although all have been carefully considered, and the opinion would be unduly prolonged by so doing. Upon the whole record, and without regard to merely technical questions, we think the equities are with the plaintiffs. Under the trying circumstances created by the panic they did more than in law they were required to do in order to fix liability upon the defendant. They extended'to him time for performance, and gave much time and effort to making arrangements by which he- could raise funds to carry out his contract, even to the extent of offering the credit of their own endorsement upon his paper, and also offered a reduction, of twenty-five cents per one hundred pounds from the contract price as a further inducement. The further effort to dispose of the sheep by re-sale, so as to make the loss as light as possible, was more than they' were required to do under the strict rules of law. They might well have brought suit for the difference between the contract price and the market price, without any effort to dispose of the stock. And if it be conceded, as contended by the defendant, that some of the sheep resold were not shipped from Grants, and were not the identical sheep that were to have been delivered to the defendant, nevertheless, for the purpose of fixing the market price by which tlie loss is to be determined, it is wholly immaterial whether the sheep were the identical animals ‘(or *173 shipped from the same place if the expense of the shipment was not increased) so long as they were of a corresponding grade and in such number that the market price thereof would be and was the same as if the identical sheep, segregated, set apart and identified, had been shipped from the same place and resold and delivered. The judgment is affirmed.